<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SARAH M., <br><br>               Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of <br> Social Security, <br>               Defendant. | Civil Action No. 22-7469 (SDW) <br><br> **OPINION** <br><br> November 7, 2023 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Sarah M.'s ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Kenneth Ayers's ("ALJ Ayers") partial denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Ayers's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

## I.   PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On June 17, 2019, Plaintiff applied for a period of disability and disability insurance benefits and, several days later, she applied for Title XVI supplemental security income.  She alleged that her disability began January 24, 2014.  These claims were denied on September 11, 2019, and again upon reconsideration on February 4, 2020.  Plaintiff filed a written request for a hearing which was held on May 14, 2021, ALJ Kenneth Ayers presiding. There, the parties testified as well as Yaako Taitz, an impartial vocational expert.  On August 5, 2021, ALJ Ayers issued a final partially favorable decision finding Plaintiff disabled under section 1614(a)(3)(A) of the Social Security Act as of December 5, 2019, the date of her 50th birthday, but not prior to that date.  The Appeals Council denied review on November 1, 2022.  Plaintiff then filed the instant appeal in this Court, and the parties timely completed briefing.  (D.E.  9 & 13.)

### B. Medical History During Relevant Time

Plaintiff alleges disability from January 27, 2018, through December 4, 2019, which is the period of time prior to her 50th birthday when she was considered a "younger individual" under the Commission's regulations which is relevant to the Court's analysis herein.  Thus, it is necessary to review her relevant medical history. On March 16, 2018, Plaintiff visited Dr. Mansour Ashraf, M.D., with concerns of a chronic cough.  (Tr. 363.)  She did not complain of any muscle pain, weakness, or numbness.  (Tr. 367.)  She did not exhibit edema or cyanosis in her extremities nor was there any obvious muscle wasting.  (Tr. 361.)  She was diagnosed with an upper respiratory infection and prescribed a Z-Pak.  (Tr. 361.)

On October 6, 2018, Plaintiff visited Dr. Lucyamma Thaolody, M.D. because of a cough, congestion, and shortness of breath, as well as pain in her feet.  (Tr. 365.)  She described intense pain in her feet in the morning that subsided throughout the day.  At the time of this visit, Plaintiff

weighed 250 pounds.  She did not exhibit obvious muscle wasting; her lungs were clear to auscultation, bilaterally with no rhonchi, rales, or wheezes; and her motor and sensory exam was normal. (Tr. 365.)  Her EKG and pulmonary function tests were considered "normal."  As a result, Dr. Thalody advised her to lose weight given her shortness of breath and scheduled blood work and referred her to a podiatrist for, what he suspected was plantar fasciitis. (Tr. 365.)

Several months later, Plaintiff visited Dr. Thalody for an upper respiratory tract infection. (Tr. 371.)  She was prescribed Amoxil and Phenergan Expectorant and scheduled an echocardiogram because of her hypertension and borderline left ventricular hypertrophy in the past. (Tr. 369.)  Dr. Thalody also ordered an arterial and venous Doppler of the leg because Plaintiff's feet were "somewhat swollen and painful." (Tr. 369.)

On January 7, 2019, X-rays of Plaintiff's bilateral knees showed enlarging tricompartmental osteophytes in both knees and a small knee joint effusion bilaterally. (Tr. 450.)  In June, she saw Dr. Ashraf again for a medication evaluation and ear infection. (Tr. 375.)  She weighed 270 pounds, and her blood pressure was 130/81. (Tr. 373.)  Again, she had no obvious muscle wasting and her extremities had no edema or cyanosis. (Tr. 373.)  She was told to follow an 1800 calorie diet and to check her blood sugar before breakfast and dinner. (Tr 373.)  Dr. Ashraf ordered a 2D echocardiogram to evaluate her heart and also sent her for an eye exam and to a podiatrist for foot care.  He prescribed her Marobid for the ear infection.

She had a follow up visit with Dr. Ashraf on September 4, 2019, and received a physical examination which was deemed "unremarkable." (Tr. 458.)  He increased her dosage of Metformin to 850 mg daily and planned to put her on a glucose monitor at the next visit. (Tr. 458.)

C. **Hearing Testimony**

At the administrative hearing on May 14, 2021, Plaintiff appeared with her attorney and testified before ALJ Ayers. (Tr. 39.)  Plaintiff testified that she was five feet and four inches tall

3

and weighed 264 pounds. (*Id*.) She lived alone in an apartment on the third floor of a building that did not have an elevator, so she was required to ascend and descend steps upon entry and exit. (TR. 49.) She cleaned once a month and cooked enough food to last a week. (Tr. 49.) She did not drive and relied on her sister to take her shopping. She explained that her legs swelled in the morning, had numbness in her feet and hands for the last couple of years, and she could only lift five to ten pounds. (Tr. 41 & 50.) She stated that she could only stand for fifteen to twenty minutes at a time before her feet started to feel numb and her legs started to swell.

Plaintiff testified that she complied with her doctor's instruction to elevate her legs which she did with pillows while laying down on the bed. (Tr. 42.) She was previously employed as a salesclerk for a pharmacy which required her to stand and walk around and stock items weighing twenty to twenty-five pounds. (Tr. 45-46.) She testified that she could no longer work because she could not stand for long periods of time due to blood clots and numbness. (Tr. 40 & 42.) She described a sensation in the bottom of her foot that felt like "pins sticking in it," which caused her to be off balance when she stood. (Tr. 44.)

Plaintiff testified to taking medication for type II diabetes which was prescribed to help control her sugar levels as well as medication for blood pressure (Metformin and Gabapentin) which made her drowsy. She is also HIV positive. (Tr. 43.)

## II.   LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "[W]here there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and

the reasons for that determination." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475,479 (3d Cir. 2007) (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "This standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is sufficiently developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

This Court may not set aside an ALJ decision "merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.1999). That is to say that this Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008).

Finally, in considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.

1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

Under 42 U.S.C. § 1382, an individual will be considered disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the individual "not only unable to do h[er] previous work but [unable], considering [her] age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged."  42 U.S.C. § 423(d)(5)(A).

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled.  20 CFR 404.1520(a) and 416.920(a); *see also Cruz*, 244 F. App'x at 480.  The test is conjunctive.  That is to say, if the ALJ determines at a step that the claimant is not disabled, the evaluation ends there and the ALJ is not to proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA") which is defined as work activity that is both substantial and gainful. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

At step two, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§

404.1520(d), 416.920(d).  If it does not, the analysis continues and the ALJ proceeds to the next step.

Before analyzing step four, the ALJ must first determine the claimant's RFC.  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and final step.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

At step five, the ALJ must determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, then she is considered disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.     DISCUSSION

#### A. The ALJ's Decision

On August 5, 2021, ALJ Ayers issued a decision concluding that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2018.  (D.E. 3-2 at 19.)

As to step one of the five-step disability analysis, he concluded that since the beginning of the relevant period Plaintiff did not engage in substantial gainful activity.  (*Id.* at 20.)  As to step two of the test, he found that Plaintiff has had the following severe impairments: hypertension; type II diabetes; morbid obesity; and internal derangement of the bilateral knees.  He found, however, that she had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  ALJ Ayers explained that although the medical evidence indicated that Plaintiff had severe impairments within the meaning of the Regulations, her impairments, severe and non-severe, singularly and in combination, were not accompanied by the findings specified for any impairment or combination of impairments included in any section of the Listing.  (D.E. 3-2 at 20.)  He relied on the fact that no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairments.  (*Id.*)

After reviewing the relevant material and determining Plaintiff's RFC, ALJ Ayers concluded that during the relevant period Plaintiff was of a younger age category and that coupled with her education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed prior to December 5, 2019.  In sum, Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) barring certain limitations (i.e., occasionally lifting/carrying ten pounds, standing/walking for two hours during eight-hour workdays, never working at unprotected heights or around hazardous moving mechanical parts, etc.).  (*Id*. at 21.)

Finally, regarding step five, on December 5, 2019, Plaintiff's age category changed to an individual closely approaching advanced age, thus under 20 CFR 404, 1560 (c), 4040.1566, 416.960(c), and 416.966, the assessment on her residual functional capacity also changed. As of that date, ALJ Ayers determined that there were no jobs that existed in significant numbers in the national economy that she could perform. Accordingly, he concluded that Plaintiff was not disabled prior to December 5, 2019, but became disabled on that date and has continued to be disabled through the date of his decision. Thus, Plaintiff was not under a disability within the meaning of the Social Security Act at any time through June 30, 2018, the date last insured. (*Id.* at 23.)

### B. Analysis

On appeal, Plaintiff seeks reversal and remand of the Commissioner's decision. (*See* D.E. 9 at 5.) First, Plaintiff asserts that the ALJ did not consider her severe impairments of "morbid obesity" at the step three medical equivalence stage or in the RFC analysis. She argues that the Commissioner did not eliminate obesity as a cause of disability when it rescinded Paragraph 9.09 but instead "wished to eliminate the mechanical analysis of obesity in favor of a more textured, enhanced and individualized analysis which would be case-specific." (*Id.* at 7–8.) She relies on Social Security Ruling 00-03P "which advised adjudicators (particularly ALJs) regarding the criteria for finding obesity to be a severe impairment (step two) and advis[ed] that its effects be analyzed at every subsequent step[.]" (*Id.*) (rescinded) (emphasis omitted).) The Commissioner stated that adjudicators "may also find that obesity by itself is medically equivalent to a listed impairment." (*Id.* at 9.) For example, if the obesity is of such a level that it markedly limits the individual's ability to walk and stand, it may substitute for arthritis and its associated criteria of a weight bearing joint with "gross anatomical deformity of a hip or knee in Listing 1.03A and [adjudicators] will then make a finding of equivalence . . . obesity can cause the limitation of

10

function . . . [adjudicators'] RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and sustained basis[.]" (D.E. at 9–10) (quoting SSR- 00-3P (rescinded)).

Here, Plaintiff did not allege disability due to obesity, but ALJ Ayers determined that her morbid obesity was a severe impairment at step two of the sequential evaluation process. (Tr. 19.) At step three, he evaluated her obesity pursuant to SSR 19-2p and explained that the "functional limitation caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing." (Tr. 20.) He concluded that the "effects of [Plaintiff's] obesity d[id] not medically equal a listing, nor d[id] the combined effects of [her] impairments including obesity meet or medically equal a medical listing." (D.E. 3-2 at 21.) This, in part, is due to the fact that while her obesity affected her ability to perform work activities, it did not preclude all work activity. Indeed, ALJ Ayers found that Plaintiff retained the ability to perform sedentary work with several limitations specifically aimed at the functional limitation Plaintiff experienced as a result of her obesity. (*Id.*)

The Commissioner argues that "[n]ot only did the ALJ's step three analysis comply with SSR 10-2p, but even assuming arguendo that the ALJ somehow erred at step three . . . Plaintiff has not demonstrated any prejudicial error as she has not identified any listing she could meet even with obesity, let alone demonstrated that she satisfied any such listing." (D.E. 13 at 9 (citing *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016))). This Court agrees. Although Plaintiff did not list obesity as an impairment the ALJ still considered it and included it in his findings. (D.E. 3–2 at 20–23.) She has not asserted any facts to indicate that her obesity precluded her from any activities, and she has failed to show what listing she would have satisfied if obesity had been considered. Thus, Plaintiff's first argument is unpersuasive.

Second, Plaintiff argues that the "RFC is not based on substantial evidence, arrives without a rationale to its findings and offers no analysis or bridge to the evidence supporting its opinion of [her] functional abilities." (D.E. 9 at 18.) She avers that the ALJ's decision concludes, without explanation, that she "can lift/carry 10 pounds occasionally and less than 10 pounds frequently. She can sit for six hours and stand/walk for two hours during an eight-hour workday." (*Id.* at 25–26 (quoting Tr. 20).) She asserts that the conclusion is the "Commissioner's own insistence on a functional analysis based on a deductive and articulated view of the evidence of record." (*Id.* at 28.) She argues that the Commissioner is required to provide "a clear and satisfactory explication of the basis on which the decision and its finding rests." (*Id.*) (internal citation omitted).

Once an ALJ has made his RFC determination, this Court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Here, the ALJ reviewed all of the relevant evidence including the medical records, medical opinions, and Plaintiff's own description of her limitations. He relied on the evidence submitted in reaching his determination that Plaintiff could perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) and this determination was accompanied by a thorough explanation and a meaningful discussion of the evidence. Indeed, the ALJ explained:

> Overall, these records document ongoing treatment for pain with Gabapentin and that she has circulatory problems in her lower extremities. However, the claimant's pain complaints have been intermittent with her denying having any pain at times. Further, the claimant's strength and gait have remained within normal limits and the record documents only intermittent (rather than chronic or ongoing) swelling more recently. Notably, these more recent records documenting problems with swelling indicate that this related to poor compliance with diet and/or medication. Moreover, she has had only routine management of her impairments and no instances of exacerbations, hospitalizations, or other factors to support that her impairments have been as limiting as alleged. Therefore, the record does not

> support that the claimant has been more limited than as set forth in the above RFC, such as that she must elevate her legs whenever seated. Given the combination of the claimant's impairments, including morbid obesity, the record supports limiting the claimant to a "sedentary" exertional level with the additional limitations set forth in the above RFC. The claimant's use of Gabapentin, as well as her intermittent complaints of pain and her morbid obesity, provide a basis for the environmental limitations in the above RFC.

(Tr. 22). This Court finds that the ALJ's conclusions are substantially supported by the evidence. The medical records show infrequent doctor visits for non-obesity related concerns and several visits for slight pains and numbness to her extremities that may arguably be obesity related. Nothing in the records supports severe or prolonged limitations due to obesity during the relevant times. ALJ Ayers's decision is affirmed.

## IV.   CONCLUSION

For the foregoing reasons, this Court finds that ALJ Ayers's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ <i>Susan D. Wigenton</i><br>
<b>SUSAN D. WIGENTON</b><br>
<b>UNITED STATES DISTRICT JUDGE</b>

Orig:   Clerk
cc:     Parties